```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

MELINDA NEAL-MYERS,

       Plaintiff,

v.                                    Case No: 2:11-cv-654-FtM-29DNF

FLORIDA DEPARTMENT OF CORRECTIONS,

       Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant's Motion to Dismiss the Third Amended Complaint (Doc. #84) filed on August 26, 2013. Plaintiff filed a Memorandum in Response to Defendant's Motion to Dismiss (Doc. #90) on September 9, 2013.

**I.**

On November 10, 2011, plaintiff Melinda Neal-Myers (Neal-Myers or plaintiff) and Ashley Cross (Cross) filed a six-count Complaint against the Florida Department of Corrections (FDOC or defendant). (Doc. #1.) Defendant filed a motion to dismiss, and in response, plaintiff and Cross filed an Amended Complaint. (Doc. #16.) Thereafter, defendant filed a second motion to dismiss. (Doc. #18.) On July 9, 2012, the Court dismissed two of the counts in the Amended Complaint without prejudice and provided another opportunity to amend. (Doc. #27.) On August 9, 2012, plaintiff

and Cross filed a Second Amended Complaint (Doc. #28) and defendant filed another motion to dismiss (Doc. #29).

On October 17, 2012, the parties notified the Court that they had successfully mediated the claims and the Court administratively closed the case. (Doc. #35.) Defendant filed a Motion to Enforce the Settlement as to Neal-Myers (Doc. #38) on October 26, 2012, and Cross filed a Notice of Voluntary Dismissal (Doc. #39) on November 1, 2012. On November 5, 2012, Neal-Myers's counsel filed a motion to withdraw as her attorney. (Doc. #40.) On November 14, 2012, the Court denied defendant's motion to enforce the settlement but granted counsel's request to withdraw from the case.[1] The Court also dismissed Cross's claims with prejudice. (Doc. #43.) The case was re-opened on the same day.

The Court issued an Opinion and Order on April 18, 2013, regarding defendant's Motion to Dismiss the Second Amended Complaint. (Doc. #62.) The Court dismissed Count I of the complaint, but granted plaintiff leave to file a third amended complaint. Plaintiff filed a Third Amended Complaint on August 14, 2013, asserting four claims against the FDOC. In support thereof, plaintiff alleges as follows:

---

[1] Plaintiff eventually hired a different attorney to represent her in this matter.

Plaintiff, an African American, was employed as a state correctional officer at the DeSoto Correctional Institution in Arcadia, Florida from on or about June 1, 2001, until on or about April 28, 2011. Plaintiff satisfactorily performed all of her job duties at all relevant times. In or about July 2010, Lieutenant Carrie Rector (Lt. Rector) assumed a supervisory position and used her authority in a discriminatory manner by treating white correctional officers more favorably than their African American counterparts. The disparate treatment by Lt. Rector included the assignment of more favorable duties to white employees, including duties where such employees sat on the perimeter of the facility and did not have to interact with inmates. In September 2010, plaintiff complained to Lt. Rector about the disparate treatment, but was reprimanded by Lt. Rector's supervisor for questioning her authority.

On or about October 2, 2010, Lieutenant Tucker (Lt. Tucker), a white supervisor, provided plaintiff with contradictory orders regarding preparation for the next shift. Shortly thereafter, Lt. Tucker called plaintiff into an office where he and Lt. Rector were present. Lt. Tucker then began yelling and blaming Cross, also an African American, for the manner in which she prepared for the next shift without providing plaintiff an opportunity to explain her actions. He then went on to complain about "you people" and "people like you", referring to African Americans.

3

The following day Cross complained about Lt. Tucker's discriminatory and hostile behavior and joined plaintiff in a discussion with Sergeant Whittaker regarding the preferential treatment received by white employees. Later that day, plaintiff and another African American correctional officer were having a conversation outside one of the buildings at the facility when they were informed to disperse at Lt. Tucker's direction. It was customary for white officers in similar circumstances to carry on with their conversations without intervention or criticism.

Plaintiff, Cross, and the other African-American correctional officer were later told that there were issues with them gathering and were directed to attend a meeting with Lt. Rector, Captain Kilgo (Lt. Rector's white supervisor), and two white sergeants. Lt. Rector informed the African American officers that they were called to the meeting because she was having issues with the three of them. When plaintiff asked why they were being spoken to together, Lt. Rector immediately began to scream that plaintiff was calling her a racist and referred to plaintiff's discussion with Sergeant Whittaker regarding claims of disparate treatment. Plaintiff then stated that she believed the meeting was racially motivated.

Plaintiff and Cross met with the warden on the following day to discuss their complaint of racial discrimination. During the meeting, Cross was specifically asked if she intended to file a

complaint related to the racial discrimination, to which she replied in the affirmative. Both plaintiff and Cross were subsequently transferred to different locations, and on October 6, 2010, Cross was terminated due to her complaints of racial discrimination.

For the next five months, plaintiff diligently performed her duties and had no difficulty with her supervisors. On or about January 31, 2011, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). On March 7, 2011, the warden notified plaintiff in writing that she would be terminated. Plaintiff continued to perform her duties while waiting for final action on her termination.

In April 2011, plaintiff learned that an assignment with a more suitable shift with the same or similar duties as her current shift would soon open up due to the retirement of a co-worker. Plaintiff asked the warden if she could be assigned to the position, but the warden informed her that he had already decided to give the position to a white co-worker with less seniority. Such a decision was against the policy and practice of the DeSoto Correctional Institution. Plaintiff filed a grievance regarding the warden's decision on April 18, 2011. Plaintiff was terminated on April 28, 2011. The stated reason for the termination was plaintiff's conduct in the October 2010 incident.

5

The Third Amended Complaint sets forth four counts under Title VII of the Civil Rights Act of 1964. Count I asserts that defendant retaliated against her for the October protest. In Count II, plaintiff alleges that she racially discriminated against when she requested assignment to the more favorable shift. Count III sets forth a claim of retaliation for the filing of an EEOC charge and Count IV asserts a claim for retaliation based on the filing of the grievance in April 2011. Defendant now seeks dismissal of Counts I, II, and IV.

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

6

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.

Defendant asserts that Count I is subject to dismissal because there is insufficient temporal proximity between the alleged protected activity in October 2010 and plaintiff's termination. In order to state a claim for retaliation under Title VII, the plaintiff must allege that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity.

Webb-Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1028 (11th Cir. 2008) (citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998)). To show causation, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002). To do this, a plaintiff may rely on the temporal proximity between the statutorily protected activity and the adverse employment action, but the temporal proximity must be "very close" if no other facts establishing causation are alleged. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). The Eleventh Circuit has held that a three-moth interval between the protected expression and the adverse employment action, without more, it too long to establish causation. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1182 (11th Cir. 2010).

Here, plaintiff alleges that the warden's discriminatory treatment in April is evidence of a causal connection between her opposition to racial discrimination in October 2010 and her termination in April 2011. It is also alleged that plaintiff was terminated due to her conduct in the October 2010 incident. Because the allegations suggest that there is a connection between the incident in October 2010 and plaintiff's termination, the Court

8

finds that plaintiff has adequately alleged causation. Accordingly, defendant's motion to dismiss Count I is denied.

**IV.**

Defendant asserts that Counts II and IV on the Third Amended Complaint should be dismissed because they exceed the scope of and are unrelated to the charge of discrimination plaintiff filed with the EEOC. Before filing a Title VII action, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. Green v. Elixir Indus., Inc., 152 F. App'x 838, 840 (11th Cir. 2005). "The purpose of this exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (internal quotation marks and citations omitted). It follows that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory, 355 F.3d at 1280 (citing Alexander v. Fulton Cnty. Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). Judicial claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC charge are permitted, but the plaintiff cannot allege new acts of discrimination. Id. at 1279-80. Nonetheless, the Eleventh Circuit

9

has noted that the scope of an EEOC charge should not be strictly interpreted. Id. at 1280.

Defendant asserts that the claims arising out of the warden's refusal to assign plaintiff to a new shift exceed the scope of the charge plaintiff filed with the EEOC. The Court disagrees. Plaintiff's charge of discrimination states, in relevant part, that:

> [M]y employer has treated me in a disparate manner with regard to procedures, policies and actions which adversely impacted me, as well as other African-American employees in regard to the terms and conditions of our employment when compared to other non-Black employees. Such disparate treatment and harassment included, among other things, racially hostile acts and comments, different standards regarding job performance and roles applied towards black employees, different standards with regard to promotional opportunities and extremely biased scrutiny and disciplinary action.

(Doc. #16-2.) Plaintiff also describes her encounter with Lt. Rector in October 2010 and her subsequent transfer. The charge further indicates that the alleged racial discrimination was an ongoing problem because plaintiff checked the "continuing action" box on the EEOC form. (Id.)

The Court finds that Counts II and IV of the Third Amended Complaint amplify the allegations of the ongoing racial discrimination identified in the charge filed with the EEOC on January 31, 2011. The EEOC could reasonably be expected to investigate the warden's decision regarding the shift assignment because the charge states that her employer, not just Lt. Rector,

10

continuously engaged in racial discrimination and applied different standards to African American employees regarding job performance and promotions. Furthermore, an investigation of the reason for plaintiff's transfer could reasonably lead to an investigation of the subsequent employment decisions regarding plaintiff. Because the April events are a continuation of the racial discrimination disclosed in plaintiff's charge with the EEOC, the Court finds that Counts II and IV do not exceed the scope of the charge.

**V.**

Defendant next asserts that Count II is subject to dismissal because plaintiff has failed to allege any adverse employment action. The Court agrees. In order to state a claim for discrimination under Title VII, a plaintiff must allege that she suffered "a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001). Here, plaintiff alleges that the warden refused to transfer her to a more favorable shift either because of her complaint of racial discrimination in October 2010, her formal complaint with the EEOC, or because of some racial animus. (Doc. #83, ¶ 33.) It is also alleged that the warden's refusal to assign her to the more favorable shift was a concurring cause of her termination.

The denial of a transfer to a position with similar duties is the adverse action alleged in Count II, not her termination. Although plaintiff alleges that the conduct is a concurring cause of her termination, the denial of the assignment did not result in a serious and material change in her employment. Therefore, defendant's motion to dismiss Count II of the Third Amended Complaint is granted.

**VI.**

Finally, defendant asserts that Count IV should be dismissed because plaintiff has failed to allege retaliatory conduct as a matter of law and has failed to allege that she engaged in protected conduct.

Defendant contends that plaintiff was notified of her termination on March 7, 2011; thus, the alleged adverse employment activity occurred before the filling of the grievance on April 18, 2011. In response, plaintiff asserts that the termination was not finalized until the requirements of Fla. Stat. § 110.227(5)(a) were satisfied and she received notice of her actual termination. The statute provides that:

> A career service employee who . . . is subject to . . . dismissal shall receive written notice at least 10 days prior to the date the action is to be taken. Subsequent to such notice, and prior to the date the action is to be taken, the affected employee shall be given an opportunity to appear before the agency or official taking the action to answer orally or in writing the charges against him or her.

Fla. Stat. § 110.227(5). According to the statute, the date that plaintiff was provided notice was not the date of her termination; therefore, the Court will consider April 28, 2011, to be the date of plaintiff's termination. Because the date of her termination was later than the date the grievance was filed, the Court finds that plaintiff has adequately alleged adverse employment action.

Defendant also asserts that plaintiff has failed to allege protected conduct because the grievance procedure used does not cover discrimination. To engage in protected activity, the employee must, "at the very least, communicate her belief that discrimination is occurring to the employer." Demers v. Adams Homes of Nw. Fla., Inc., 321 F. App'x 847, 852 (11th Cir. 2009) (internal quotations and citations omitted). Plaintiff may have utilized the wrong procedure to complain of discrimination; however, it does not negate the fact that she communicated her belief that discrimination is occurring to her employer. Because plaintiff has alleged that she informed her employer of the discriminatory conduct, defendant's motion to dismiss Count IV is denied.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss the Third Amended Complaint (Doc. #84) is **GRANTED** in part and **DENIED** in part. Count

II of plaintiff's Third Amended Complaint is dismissed.  The motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of March, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record

14